[No. 827. Decided July 13, 1893.]

GEORGE L. HILL, *Appellant*, v. A. B. YOUNG AND HULDA A. YOUNG, *Respondents.*

APPEAL — CASE DIVIDED FOR HEARING — STATEMENTS CERTIFIED BY TWO JUDGES — PARTITION — WHO MAY BRING — PLEADING — COMMUNITY PROPERTY — POWER OF HUSBAND AFTER DEATH OF WIFE — TITLE OF HEIR WHEN NO ADMINISTRATION.

Where a suit is begun before a judge having charge of the equity cases arising in a county, and during its progress is transferred by him to another judge having charge of the jury cases, for the purpose of submitting certain questions of fact to a jury, the second judge acquires no jurisdiction of the suit, and, on appeal, the only judge authorized to certify a statement of facts is the one who originally assumed jurisdiction.

In this state, a suit for partition of lands may be maintained by a tenant in common against those in possession under an adverse claim of title, without the institution of a prior action at law for the trial of title.

Where it appears from the evidence that partition of land cannot be made without great prejudice to the owners, a sale may be

3—7 WASH.

ordered under Code Proc., §584, though the necessity therefor has not been alleged in the complaint.

Where there has been no administration upon the estate of a wife, or upon the community property, for a period of eight years after her death, her husband and an only child surviving her, the presumption is that as to the community real property there was no necessity for administration, and that the right of the child to the possession of his share in the community real estate as heir of his mother is complete.

Upon the death of a wife, the husband's power to dispose of community realty, although acquired under the act of 1869, ceased, and the property became vested by moieties in the husband and the children.

In an equity case, the insufficiency of a reply is immaterial, when the defendants wholly fail to substantiate the allegations of their answer.

The presumption established by the deed to a husband showing on its face a conveyance of land in 1871, for a valuable consideration, that the land was community property, is not overthrown by testimony showing that the property owned by the husband in 1859, at the time of his marriage, had undergone frequent exchanges, while he had earned other money outside of that obtained through the use of such separate property, no account being kept of any moneys made in any transaction, and that he could not tell from what source he derived the money paid for the land in 1871.

*Appeal from Superior Court, King County.*

*Solon T. Williams,* for appellant.

*Preston, Albertson & Donworth,* for respondents.

The opinion of the court was delivered by

STILES, J.—This is an appeal from a judgment of dismissal rendered in a partition suit, commenced as a suit in equity. The judge sitting for the hearing of equity causes heard the testimony of the parties until each had rested, and then finding that the cause involved the determination of facts concerning the title which were proper to be submitted to a jury, instead of calling a jury himself, made an order transferring the case to another department of the same court, where in the orderly disposition of the

business of the court jury cases were usually heard. In this second department special issues covering the question whether the land sought to be partitioned had been acquired by the grantor of the respondent, A. B. Young, with money which was his separate property, or with money which was the community property of the grantor and his wife, were submitted to a jury and determined. Upon application to each of the judges who heard the case for judgment upon the special findings, each declined to act, upon the ground that the other had the only jurisdiction in that matter, and the *mandamus* case of *State, ex rel. Hill, v. Lichtenberg,* 4 Wash. 553 (30 Pac. Rep. 659), was resorted to to settle the question. In obedience to the writ of mandate, the judge of the equity department proceeded to a final determination by dismissing the action. ·

Upon this appeal from that judgment, the first point made is by the respondents upon their motion to strike the statements of facts, of which there are two. Each of the judges has certified to a statement as containing all the facts, etc., in the case before him, but, of course, not as containing any facts occurring before his associate, and the argument made in favor of the motion is two-edged, for it is urged that inasmuch as neither judge has certified to all the facts, there is no complete statement certified by either, and therefore no statement upon which the court can review the case.

Neither party took the position exactly, but it seems to us that the simplest way out of the matter will be to entirely ignore the statement concerning the jury trial. There was but one legal trial, and that was the one before the equity judge, the proceeding taken to place the case before a jury having been entirely irregular and unwarranted insofar as it attempted to transfer the case to a department presided over by another judge. We would not be here understood as holding that the judges, in counties having

more than one judge, may not refer the entire hearing of a case, or of any integral part of a case, to some other judge. But there can be no propriety in sending a part of a trial on the merits into another department, or after the trial has progressed, in sending the whole case to some other judge, merely because there are found to be questions which might better be submitted to a jury. In this instance the case had been fully heard and submitted for final determination of the question of title before the order to transfer was made upon the court's own motion, and all benefit of the hearing was threatened to be lost, which threat was so far realized that upon the jury trial the most important witness had gone home to another state, whence he refused to return. Holding these views, we shall sustain the motion to strike the statement of the jury trial and retain the other as the statement in the case.

2. The complaint shows on the face of it that the respondents had been since 1883 in possession of the land sought to be partitioned under a conveyance of the whole tract from the father of the appellant, who claimed a half interest as sole heir of his mother, deceased in 1883 before the conveyance. These facts, respondents claim, precluded any suit for partition until there had been an action at law to try title. Our statute, Code Proc., § 577, provides: "When several persons hold and are in possession of real property as tenants in common" there may be a partition, and the common law rule is well settled that where the party seeking partition has been ousted of possession by his alleged tenant in common under a claim of adverse title to the whole estate, equity will not determine the legal rights of the parties. Freeman on Cotenancy, § 447.

Where the pleadings of the defendant disclosed the adverse claim, the practice was to stay the partition proceeding until the plaintiff got his judgment for possession at law (*Brown v. Cranberry Iron & Coal Co.*, 40 Fed. Rep.

849); but where the complaint itself failed to allege possession, or, as in this case, alleged adverse possession in the defendant, naturally a dismissal followed. Such has been the construction under statutes having the same language as that above quoted. *Florence v. Hopkins*, 46 N. Y. 182. Freeman on Cotenancy, § 450, however, shows that the rule has been to the contrary in Massachusetts and Maine, and closes thus:

"In truth, the limitations attending proceedings in partition are constantly weakening, and the tendency to do full and complete justice to the parties in one action is becoming irresistible. Wherever the question has recently arisen as a new question, the answer to which the courts were free to give without consulting decisions made at an early day when the common law rules were more potent than at present, it has been resolved in favor of taking jurisdiction whenever the complainant shows himself seized of the requisite title, whether the lands sought to be partitioned are held adversely to him or not."

This new practice has long been in vogue in California, where *Bollo v. Navarro*, 33 Cal. 459, and *Martin v. Walker*, 58 Cal. 590, were decided, and it would seem to be the only rational practice under a code, especially when our Code Proc., § 583, is considered, that section providing as follows:

"The rights of the several parties, plaintiffs as well as defendants, may be put in issue, tried and determined in such suit."

This law exists in California, and the court, in *Martin v. Walker*, alludes to it as an additional reason for its ruling confirming many preceding cases on the same subject.

3. It was not necessary to allege that there was necessity for a sale in lieu of partition, or that partition could not be made without great prejudice to the owners. Code Proc., § 584, provides that, if such a state of facts appears from the evidence, without allegations in the complaint, a sale may be ordered.

4. There had been no administration of the estate of Mrs. Hill, deceased. We hold, however, that where the wife died in 1883, leaving an only child and her husband surviving, and there had been no administration upon her estate, or upon the community property, there was a clear presumption in 1891 that as to the community real property there was no necessity for administration, and that the right of the child to the possession of his share in the community real estate as heir to his mother was complete. The husband alone has the power to manage and control community real property, and he alone can incur indebtedness which would become a charge upon such property, except for family necessities. These are his debts, and to him they are presented for payment. Statutes of limitation will run against them while he lives and remains in the state; and after so long a time, and no petition for administration having ever been filed, it ought to be presumed in favor of the child, either that there were no community debts, or that they have been paid or barred. We so rule, in full view of *Balch v. Smith*, 4 Wash. 497 (30 Pac. Rep. 648).

5. The land in controversy was acquired in 1871, being conveyed to the husband by deed of purchase. The act of 1869, "defining the rights of husband and wife," declared that property acquired by either husband or wife, except that acquired by gift, bequest, devise or descent, should be "common property." Sec. 2. It also provided that the husband should have the same absolute power of disposal of the common property as he had of his separate estate. Sec. 9. Respondents maintain that this power to dispose was a vested right in the husband, which could not be taken away by any subsequent statute. But it is not necessary to decide this point. The act of 1869 having declared certain property "common property," did not make provision for the disposal of such property upon the

death of either spouse, as was done by later laws on the same subject; but we think that without anything further than was contained in that act the courts of the territory would have been bound to administer upon such property, after the death of husband or wife, according to the established rules of those states and countries where common or community property laws had existed. The first and cardinal of such rules was that the community was dissolved by the decease of either spouse; next, the right of disposal in either spouse was ended; and, third, the property became vested by moieties in the survivor and the children. Therefore, upon the death of Mrs. Hill, in 1883, even if the act of 1869 was the only law applicable to this land, the right of the husband to dispose of the whole estate terminated. And it may be further stated that the purchaser in this instance knew of the marriage relation which existed between his grantor and Mrs. Hill, and knew, also, that the appellant was their only child.

6. Whatever objections may have been well founded as against the sufficiency of the reply are obviated by the fact that this was an equity cause, and that upon the trial the respondents wholly failed to substantiate the allegations of their answer, which they claim were not met by the reply.

7. Appellant produced the deed to his father which showed on its face a conveyance of land for a valuable consideration, and *prima facie* the land conveyed was common property. *Yesler v. Hochstettler*, 4 Wash. 349 (30 Pac. Rep. 398).

The burden, then, was upon respondents to show that the money paid for the land was the separate property of John S. Hill. The Hills were married in 1859, at which time the husband owned one-third of a small steamboat, worth about $2,000. In 1860 the interest in the steamer was exchanged for 50,000 feet of lumber, worth about $1,250. The lumber was sold, and $800 of the money

derived therefrom was used to buy a farm in King county. In 1866 the farm was sold for a cash payment of $900 and a credit, which was never collected.   This $900 was perhaps used to pay a part of the cost of a steamboat called the "Gem," the whole cost of which was between $3,000 and $4,000.   The testimony of Hill as to where he got the balance of the money paid for the boat was that "he didn't know; he expected he made it somewhere."   He owned the "Gem" until 1872, and from the time he bought her, about 1866, until 1872, he operated her on Puget Sound, himself acting as captain.   Over and above the operating expenses, he received about $100 a month for his labor and the earnings of the boat, and he testified that the money he paid for this land must have been money acquired from his use and operation of the "Gem," as he was then in no other business.   But again he said that in the years in which he was not steamboating — 1860 to 1866 — he made money right along in other business; that he never kept any account of any moneys made in any transaction; and that he could not tell whether his money came from his steamer or whether it was money made before.

Under every consideration of the law, such a state of facts left it entirely uncertain whether the property which Captain Hill owned before marriage had anything to do with earning him anything in 1871, and the presumption of the deed was undisturbed.

Upon the whole case, therefore, we are of opinion that the court erred in dismissing the action, and that the cause should be remanded for an interlocutory judgment establishing appellant's title to an undivided one-half of the tract in question, and his right of possession as tenant in common with the respondents, and for further proceedings in the matter of the partition.   So ordered.

HOYT, SCOTT and ANDERS, JJ., concur.

DUNBAR, C. J., concurs in the result.